72385. GRABOWSKI et al. v. RADIOLOGY ASSOCIATES, P.A.
(352 SE2d 185)

BEASLEY, Judge.

Appellants' decedent died from the effects of a head injury he suffered while stationed at Fort Benning, Georgia. Claiming that medical personnel at the Medical Center Hospital in Columbus failed to adequately diagnose and treat their decedent, thereby causing his death, appellants filed a medical malpractice action against the decedent's treating physician, his radiologist, the hospital authority, and appellee Radiology Associates. Upon the close of appellants' case, the hospital authority and appellee Radiology moved for and were granted directed verdicts. From the grant of Radiology's motion the plaintiffs-appellants bring this appeal.

1. During the trial, Radiology moved for a directed verdict on the ground that there was no evidence of a causal connection between radiologist Dr. Taylor's alleged negligent reading of the arteriogram and the death of decedent. After much argument from both sides, the court ruled: "I don't see that I can do anything but give a directed

verdict for Radiology."

Although the motion was made and orally granted on May 22, the order was not filed until May 23. In the meantime, the trial continued with the other defendants to May 24, until what appeared to be the close of the plaintiffs' case-in-chief when plaintiffs elected to voluntarily dismiss their suit pursuant to OCGA § 9-11-41 (a). Had the dismissal been prior to the filing of the order, the latter would have been a nullity because it would have been entered after the case had been withdrawn altogether. It having been entered in the course of the trial, it was final as to Radiology and thus, unless reversed, will serve as res judicata in a new suit. The order would have to be deemed a judgment as to Radiology because it "adjudged . . . that Plaintiffs said action is hereby dismissed on its merits as to Defendant Radiology." See in this connection *Steele v. Cincinnati Ins. Co.*, 252 Ga. 58 (311 SE2d 470) (1984). It was not just an interlocutory order which would have had no effect when the suit was thereafter voluntarily dismissed. It was an appeal from the "judgment (which) granted an Order on Motion For Directed Verdict . . ." Thus, although the suit was dismissed, the appeal is not moot.

2. The sole ground for directed verdict asserted below and ruled on below was that there was no evidence of a causal connection between Dr. Taylor's alleged negligence as the radiologist who misread the arteriogram, and the death. The trial court agreed with Radiology, and that is the only question we are called upon to examine.

Appellee now briefly alludes to the absence of evidence of employer/employee relationship, which would hold Radiology liable under the theory of respondeat superior, but that is raised for the first time here, and is not even the focus of the appellate enumeration. The fact that Taylor was an employee of Radiology was not contested at trial, else why would Radiology have gone through the trial in the first place? Taylor was not a defendant. Although he was named, he filed no answer and was not represented at trail other than by Radiology, which vigorously defended his actions and moved for directed verdict on the lack of causal connection theme. Radiology did not object to the hypothetical which placed Taylor as an employee of Radiology because that was not an issue in the case.

It is too late to raise this evidentiary ground. "A motion for a directed verdict shall state the specific grounds therefor." OCGA § 9-11-50 (a). "A ground not mentioned in a motion for directed verdict cannot thereafter be raised on appeal. *Adams v. Smith*, 129 Ga. App. 850 (1) (201 SE2d 639); *J. C. Penney Co. v. Davis & Davis, Inc.*, 158 Ga. App. 169 (1) (279 SE2d 461)." *Fidelity, &c. Ins. Co. v. Massey*, 162 Ga. App. 249 (1) (291 SE2d 97) (1982); *Omni Express v. Cleveland Express*, 178 Ga. App. 42, 43 (3) (341 SE2d 911) (1986).

While these four cases deal with *denials* of directed verdict, and

the Supreme Court has held that the rule applies to such appeals, *Johnson v. Hensel Phelps Constr. Co.*, 250 Ga. 83 (295 SE2d 841) (1982), the rule should apply also when directed verdict is *granted*. Wright & Miller, Federal Practice & Procedure: Civil § 2536, do not apply a different rule of appellate review when it is from a grant, rather than a denial, of a motion for directed verdict. The function of the requirement that the specific grounds be stated "is to assure that the trial court has an adequate basis for its decision." 5A Moore's Fed. Practice Par. 50.04.

The statute does not limit its scope. The judge is ruling on that ground, and under principles of appellate review, our role is to determine whether the trial court erred in ruling as it did, considering what it was asked to decide.[1] *Redwing Carriers v. Knight*, 143 Ga. App. 668, 674 (239 SE2d 686) (1977).

There is good reason for the same rule to apply when the appeal is from a *grant* of directed verdict. It ends the case, taking it from the jury and conclusively deciding it, whereas a denial merely sends the case to the jury and still leaves open the remedy of a motion for judgment notwithstanding the verdict. The requirement should be enforced where directed verdict is *granted*, because the absence of proof of an element which the motion is based on may have been a mere oversight of evidentiary offer which can be cured in the discretion of the court to avoid injustice and promote a decision on the merits. After all, the Civil Practice Act "shall be construed to secure the just . . . determination of every action," as well as the speedy and inexpensive resolution. OCGA § 9-11-1. The court may permit the party at fault to reopen its case for the submission of the possibly available, yet thus far absent, evidence. *Wallace v. Yarbrough*, 155 Ga. App. 184, 185 (270 SE2d 357) (1980); *Worth v. Ga. Farm &c. Ins. Co.*, 174 Ga. App. 194, 196 (2) (330 SE2d 1) (1985).

The reasoning in *Johnson* reaches down to the same concern existing here, that the matter surfacing for the first time on appeal never had an airing on the trial level. The statute plainly states the requirement, giving the movant for directed verdict the clearest notice. That he must state all of his grounds should come as no surprise.

The same rule as to raising grounds should apply regardless of the outcome of the motion. There is no discernable justification for holding that one need only state all grounds, in order to preserve them in instances where the motion is thereafter denied but not when it is granted.

---

[1] Cf. *Green v. Knight*, 153 Ga. App. 183 (1) (264 SE2d 657) (1980), where movant stated grounds but not *specific* grounds. However, the lack of evidence of cause-in-fact was covered in the ground of "no negligence." Further, it involved a lack which could not be cured upon reopening the plaintiff's case.

3. As to the ground raised, there is some evidence that radiologist Taylor's misreading contributed to causation because expert witness radiologist Newton said that if Taylor had interpreted the arteriogram correctly, he would have known its negative showing and would have been under a duty to report this to the neurosurgeon Adams. Although Adams had also incorrectly read the arteriogram several hours earlier (around 2:30 a.m.-3:00 a.m.) and embarked on a course which did not include a CT scan, Taylor's misreading was only about four hours later. His failure to report a negative reading of the arteriogram precluded Adams' ordering a CT scan at that time, which CT scan would have shown the surgical lesion and the necessity to operate on the same morning the decedent came into the hospital rather than when his condition had evolved to near death the next day.

If radiologist Taylor had no duty to report a negative reading (which he missed but was evident) to the neurosurgeon, why did he read the arteriogram in the first place? What was the purpose of his reading it, if not to report to the neurosurgeon if he found a negative reading, so that the neurosurgeon could take that into account in prescribing the further course of treatment?

"A directed verdict is proper only where there is no conflict in the evidence as to any material issue and the evidence introduced together with all reasonable deductions or inferences therefrom demands a particular verdict." *Carver v. Jones*, 166 Ga. App. 197, 199 (3) (303 SE2d 529) (1983). Even "slight" evidence was regarded as sufficient to prevent the devastations of a directed verdict, in *Worth v. Ga. Farm &c. Ins. Co.*, supra. Where there is "some evidence," or "any evidence" supporting the respondent's assertions, disputed issues are created which are for jury resolution. *United Fed. Savings &c. Assn. v. Connell*, 166 Ga. App. 329, 330 (1) (304 SE2d 131) (1983).

We reverse, as there was some evidence of a causal connection.

*Judgment reversed. Banke, C. J., Deen, P. J., McMurray, P. J., Birdsong, P. J., and Pope, J., concur. Carley, J., concurs in the judgment only. Sognier and Benham, JJ., dissent.*

BENHAM, Judge, dissenting.

1. In its decision, the majority announces new appellate rules in the State of Georgia: neither the "harmless error" rule nor the "right for any reason" rule is applicable in cases where the judgment entered is the result of the grant of a motion for directed verdict. In the past, this court has held that "while some of the court's reasons for directing the verdict as to this issue were incorrect, *nevertheless if the court is right for any reason* it will be affirmed." *Paul v. Jones*, 160 Ga. App. 671, 673 (288 SE2d 13) (1981). (Emphasis supplied.) In *Dalton &c. Truck Stop v. ADBE Distrib. Co.*, 146 Ga. App. 8 (1) (245 SE2d 346) (1978), the trial court directed a verdict in favor of the

plaintiff prior to the introduction of any evidence by the defendant. Noting that the trial court had no authority to direct a verdict for the plaintiff prior to the presentation of the defendant's evidence, this court stated that, nevertheless, "if the judgment be right for any reason, it will be affirmed." In *Cordell Ford Co. v. Mullis*, 121 Ga. App. 123 (6) (173 SE2d 120) (1970), this court labelled the direction of a verdict in favor of the defendant as "a case where the right result has been reached for the wrong reasons" and proceeded to affirm the judgment. See also *Gleaton v. Atlanta*, 131 Ga. App. 399 (3) (206 SE2d 46) (1974): "If a judgment excepted to [the grant of a directed verdict] is right for any reason, it will be affirmed by the appellate courts." In *Green v. Knight*, 153 Ga. App. 183 (1) (264 SE2d 657) (1980), a party had made a motion for directed verdict, but had failed to specify the grounds upon which the motion was premised. Nevertheless, the trial court directed the verdict. This court, concluding that the moving party was entitled to judgment as a matter of law, cited the doctrine of harmless error and affirmed the judgment entered on the grant of a directed verdict. Since both the doctrine of harmless error and the right for any reason rule have been applied by this court to cases in which an appeal was brought from the grant of a directed verdict, those rules should be applied to the case at bar, and the judgment of the trial court affirmed. While Wright & Miller may, in their tome on federal practice and procedure, espouse the principle put forth by the majority, the precedential value of Georgia case law should outweigh a treatise on federal practice.

By means of reviewing the record in the present case, I have ascertained that appellants believe appellee is potentially liable under the theory of respondeat superior for the alleged malpractice of the radiologist involved. However, appellants presented no evidence of the relationship, if any, between the radiologist and appellee, and there was no evidence that appellee was involved with the diagnosis and care of appellants' decedent or that appellee was in any way negligent towards appellee's decedent. In the absence of proof of a relationship between appellee and appellants' decedent, or appellee and the radiologist who treated appellants' decedent, appellee could not be held liable for negligent treatment of the decedent. *Clanton v. Von Haam*, 177 Ga. App. 694 (2) (340 SE2d 627) (1986); *Strickland v. ITT Rayonier*, 162 Ga. App. 317 (1) (291 SE2d 396) (1982).

Appellants point to several places in the transcript where, they maintain, there exists proof of the employer-employee relationship between appellee and the radiologist. However, in each instance, the "proof" consists of a hypothetical question in which an expert was asked to assume that the radiologist was an employee of appellee and had done some act. The fact was never proved by competent evidence. The assumption of an unproven fact in a hypothetical question

does not constitute proof of that fact, and appellee's failure to object to the hypothetical question in which such a fact was assumed is a waiver only of the hypothetical and not a waiver of the questioner's burden of proving the facts upon which the hypothetical question is based. It does not give probative value to the unproven assumptions made therein. In the absence of proof of appellee's role vis-a-vis appellants' decedent, proof of negligence on the part of appellee, or proof that appellee was responsible for the actions of anyone allegedly negligent, I believe the trial court did not err in granting appellee's motion for directed verdict.

2. Although Division 1 of the majority opinion is mere dicta, I am compelled to point out that the trial court's oral pronouncement of the directed verdict precluded the filing of a voluntary dismissal of the case against appellee. "[T]he announcement by a trial judge of a decision that will terminate a civil case, though that decision has not been formally reduced to writing and entered, will preclude the filing of a voluntary dismissal after the announcement but before the judgment is actually entered by the trial judge. [Cits.]" *Bytell v. Paul*, 173 Ga. App. 83, 84 (325 SE2d 451) (1984). See also *Mixon v. Trinity Svcs.*, 176 Ga. App. 679 (1) (337 SE2d 362) (1985). Thus, contrary to the majority's assertion, the filing of appellant's voluntary dismissal prior to the filing of the order granting the directed verdict in favor of appellee would not have rendered the latter a nullity since the oral pronouncement of the intent to direct a verdict preceded the filing of the voluntary dismissal.

3. Finally, I differ with the majority as to factual matters contained in the main opinion. Contrary to the assertion contained in the majority opinion, Dr. Taylor, the alleged employee of appellee, *was* a defendant in the lawsuit. While the record before us does not contain Dr. Taylor's answer, that is because appellants did not designate that pleading for inclusion in the appellate record. See OCGA § 5-6-43. Appellee Radiology went through the trial because it was also named a defendant in the complaint, and I can find nowhere in the record or transcript anything from which the conclusion may be drawn that Taylor was represented at trial by Radiology Associates.

Because I believe the trial court was correct when it directed a verdict in favor of appellee, I would affirm the trial court's judgment.

I am authorized to state that Judge Sognier joins in this dissent.

DECIDED DECEMBER 1, 1986 —
REHEARING DENIED DECEMBER 18, 1986 —

*B. Seth Harp, Jr., J. Roxanne Mincey*, for appellants.

*Ray L. Allison, Richard Y. Bradley,* for appellee.